**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

| | | |
|---|---|---|
| LANCE J. WEINRIB, Individually, and as | : | CIV. NO.: 14-cv-00953 |
| Executor of the Estate of Alfred Weinrib, | : | |
| & MELINDA M. WEINRIB | : | |
| | : | ECF CASE |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| WINTHROP-UNIVERSITY HOSPITAL, NEW | : | COMPLAINT |
| YORK-PRESBYTERIAN HEALTHCARE | : | |
| SYSTEM, INC., THE ROSALIND AND JOSEPH | : | |
| GURWIN JEWISH GERIATRIC CENTER OF | : | |
| LONG ISLAND, INC d/b/a GURWIN JEWISH | : | |
| NURSING & REHABILITATION CENTER, | : | |
| GOOD SAMARITAN HOSPITAL MEDICAL | : | <u>JURY TRIAL DEMANDED</u> |
| CENTER, and CATHOLIC HEALTH SYSTEM | : | |
| OF LONG ISLAND, INC. d/b/a CATHOLIC | : | |
| HEALTH SERVICES OF LONG ISLAND | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------

Plaintiffs, LANCE J. WEINRIB, Individually and as Executor of the Estate of Alfred Weinrib and MELINDA M. WEINRIB  ("Plaintiffs"), by and through their undersigned counsel, EISENBERG & BAUM, LLP, as and for their Complaint against Defendants, WINTHROP UNIVERSITY HOSPITAL, THE ROSALIND AND JOSEPH GURWIN JEWISH GERIATRIC CENTER OF LONG ISLAND, INC. d/b/a GURWIN JEWISH NURSING & REHABILITATION CENTER, GOOD SAMARITAN HOSPITAL MEDICAL CENTER, NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC. d/b/a CATHOLIC HEALTH SERVICES OF LONG ISLAND ("Defendants") hereby allege as follows:

## PRELIMINARY STATEMENT

1. Alfred Weinrib, now deceased, was an individual who was profoundly deaf and communicated primarily in American Sign Language. Mr. Weinrib was a patient at Defendants' facilities where he was denied reasonable accommodations for his disability despite repeated requests to facilitate effective communication between himself and defendants' employees during his medical treatment beginning on September 10, 2012 and ending when he passed away on April 4, 2013. Alfred Weinrib endured significant amount of pain, suffering, and emotional distress directly due to the denial of effective communication by Defendants during his remaining months prior to succumbing to cancer. Diagnosis and treatment options were not explained in a meaningful way to Alfred Weinrib or his family. Procedures were performed without the aid of a qualified Sign Language interpreter and without fully and clearly explaining to Alfred Weinrib the risks and benefits of the procedures being performed. Defendants rarely, if ever, provided a Sign Language interpreter to Alfred Weinrib and Plaintiffs. In most instances, effective communication could not have taken place without the aid of a qualified Sign Language interpreter. Due to the lack of reasonable accommodation and effective communication, Mr. Weinrib never knew that he had been diagnosed with cancer up to his death.

2. Plaintiffs, Lance J. Weinrib and Melinda M. Weinrib are Alfred Weinrib's children and beneficiaries to his Estate who bring this matter for individual, associational, and representative claims related to their father's denial of effective medical treatment while at defendants' facilities. Plaintiffs will forever be traumatized by their experiences in dealing with the Defendants and witnessing their father, who is no longer alive, suffer due to lack of effective communication. Plaintiffs are both profoundly deaf and communicate primarily in American Sign Language. Plaintiffs were also denied accommodations by defendants in order to facilitate

effective communication between themselves and medical staff. Plaintiffs were almost never provided accommodations by Defendants during a nearly seven month period and the times they were provided them were only after repeated continuous demands for weeks on end for a qualified Sign Language interpreter. Due to the lack of reasonable accommodation and effective communication, Lance J. Weinrib and Melinda M. Weinrib did not know that their father died of cancer until after his death.

3. Defendants' wrongful, illegal, deliberately indifferent, and intentional discrimination against Deaf Individuals on the basis of their disability is reflected by the defendants' lack of training and lack of serious policies of non-discrimination against Deaf individuals.

## NATURE OF THE CLAIMS

4. Plaintiffs seek declaratory, injunctive, and equitable relief, monetary damages, and attorneys' fees to redress Defendants' unlawful discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12101 et seq. and its implementing regulation, 28 C.F.R. Part 36, the Rehabilitation Act of 1973 ("Rehab Act") (29 USC §§ 791 et seq.), New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq. as well as other state and common law causes of action. Plaintiffs seek relief as a result of defendants' discriminatory practices on the basis of disability in failing to provide Alfred Weinrib and plaintiffs with effective communication in the form of reasonable accommodations including sign language interpreters and other auxiliary aids and services.

5. Defendants' unlawful, discriminatory conduct was intentional, knowing, malicious, deliberately indifferent, willful and wanton and showed a reckless disregard for Alfred Weinrib and Plaintiffs' protected rights to be free from discrimination. This conduct directly caused Alfred Weinrib and continues to cause Plaintiffs humiliation, emotional pain, mental anguish,

and suffering.

## THE PARTIES

6. Plaintiff, LANCE J. WEINRIB brings this action individually and as Executor of the Estate of Alfred Weinrib and is an individual residing in Suffolk County, New York. Plaintiff LANCE J. WEINRIB is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal and State discrimination laws.

7. Plaintiff, MELINDA M. WEINRIB is an individual residing in Suffolk County, New York. Plaintiff MELINDA M. WEINRIB is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal and State discrimination laws.

8. Defendant, WINTHROP-UNIVERSITY HOSPITAL, at all times hereinafter mentioned, was and still is licensed and doing business in the State of New York with a principal place of business at 259 First Street, Mineola, New York, 11501. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, they are subject to the requirements of both the ADA and Section 504 of the Rehab Act.

9. Defendant, NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., at all times hereinafter mentioned, was and still is licensed and doing business in the State of New York with a principal place of business at 525 East 68th Street, New York, New York, 10021. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, they are subject to the requirements of both the ADA and Section 504 of the Rehab Act. Winthrop-University Hospital is a member of the New York-Presbyterian Healthcare System, Inc.

10. Defendant, THE ROSALIND AND JOSEPH GURWIN JEWISH GERIATRIC CENTER OF LONG ISLAND, INC d/b/a GURWIN JEWISH NURSING & REHABILITATION CENTER, at all times hereinafter mentioned, was and still is licensed and

doing business in the State of New York with a principal place of business at business at 68 Hauppauge Rd. Commack, NY 11725. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, they are subject to the requirements of both the ADA and Section 504 of the Rehab Act.

11. Defendant, GOOD SAMARITAN HOSPITAL MEDICAL CENTER, at all times hereinafter mentioned, was and still is licensed and doing business in the State of New York with a principal place of business at 1000 Montauk Hwy, West Islip, NY 11795. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, they are subject to the requirements of both the ADA and Section 504 of the Rehab Act.

12. Defendant, CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC. d/b/a CATHOLIC HEALTH SERVICES OF LONG ISLAND, at all times hereinafter mentioned, was and still is licensed and doing business in the State of New York with a principal place of business at 992 North Village Avenue, Rockville Centre, New York, 11570. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, they are subject to the requirements of both the ADA and Section 504 of the Rehab Act.  Good Samaritan Hospital Medical Center is a member of the Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island.

## JURISDICTION and VENUE

13.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this civil rights action arises under federal law, *see* 42 U.S.C. § 12101, *et seq*. This Court also has original subject matter jurisdiction over this action inasmuch as this action is predicated on claims arising under the Rehabilitation Act of 1973 (29 U.S.C. § 791 et seq.) and the Americans with Disabilities Act, (42 U.S.C. § 12101 et seq.). In addition, pursuant to 28

U.S.C. §1367 this Court has supplemental jurisdiction over plaintiffs' State Law claims under 28 U.S.C. §1367 and principles of pendent and/or ancillary jurisdiction.

14. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events that give rise to the claims occurred in this district.

15. Venue is properly laid in the Eastern District of New York in that the parties all reside within the Eastern District of New York and the acts giving rise to the causes of action asserted herein occurred in the Eastern District of New York.

## **BACKGROUND**

16. The objective of Title III of Americans with Disabilities Act, ("ADA") is to eliminate discrimination against individuals with disabilities in places of public accommodation. 42 U.S.C. Section 12181 et seq.

17. Section 302(a) of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination "on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

18.    42 U.S.C. § 12182(b)(1)(E) states that it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

19. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance". 29 U.S.C. 794.

20. Defendants provide public accommodations within the meaning provided in each of the above laws.

21. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to Alfred Weinrib and plaintiffs whom are Deaf to ensure effective communication. See 28 C.F.R. Section 36.303(c).

22. Such discrimination includes the failure to provide qualified sign language interpreters to Alfred Weinrib and Plaintiffs. These auxiliary aids were requested and denied by defendants, Winthrop-University Hospital and New York-Presbyterian Healthcare Sytem, Inc. during all of Alfred Weinrib's hospitalizations from September 4, 2012 through September 10, 2012, September 13, 2012 through September 14, 2012, October 1, 2012 through October 2, 2012 as well as on all occasions prior and thereafter. These auxiliary aids were repeatedly denied and almost never provided. Such discrimination also includes a failure to provide a Videophone to Alfred Weinrib which was requested during each and every hospitalization at defendants' facility.

23. Such discrimination includes the failure to provide qualified sign language interpreters to Alfred Weinrib and plaintiffs by Defendant, The Rosalind and Joseph Gurwin Jewish Geriatric Center of Long Island, Inc. d/b/a Gurwin Jewish Nursing Home & Rehabilitation Center. These auxiliary aids were requested and denied by Defendant, during Alfred Weinrib's treatment from September 10, 2012 through November 16, 2012 and February 20, 2013 through March 12, 2013 as well as on all occasions prior and thereafter. Plaintiffs were discriminated against and treated with deliberate indifference. During his treatment there was only one occasion where Defendant provided a qualified Sign Language interpreter during these periods of treatment. Also, Defendant failed to provide a Videophone to Alfred Weinrib which

was requested during each and every residency at defendant's facility.

24. Such discrimination includes the failure to provide qualified sign language interpreters to Alfred Weinrib and plaintiffs by Defendants, Good Samaritan Hospital Medical Center and Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island during Alfred Weinrib's hospitalizations from December 22, 2012 through December 30, 2012, February 13, 2013 through February 20, 2013 as well as on all occasions prior and thereafter. These auxiliary aids were requested and denied repeatedly by Defendants and were almost never provided. Discrimination by Defendants also includes a failure to provide a Videophone to Alfred Weinrib which was requested during each and every hospitalization at defendant's facility.

25. As a result of the failure of defendants, their agents, servants and employees to comply with Alfred Weinrib and Plaintiffs' repeated requests for qualified Sign Language interpreters, and other auxiliary aids and services, (with the exception of the rare occasions they were provided with a qualified Sign Language interpreter and/or Video Remote Interpreting machine after weeks of continuous demands) Alfred Weinrib and plaintiffs were forced to attempt to communicate with doctors, nurses, technicians, hospital staff and other health care providers by attempting to understand their cryptic notes and vague and unclear bodily gestures.

26. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct doctor patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of our language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said.

27.  Reliance by deaf and hearing and speech impaired individuals upon family members, to interpret medical communications for them, has been demonstrated and found to be unwise and dangerous, inasmuch as such family members are generally not trained to act as interpreters, particularly in medical and hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying for and to the hearing impaired individual, the full and complete content of medical communications. In addition, family members are generally too personally and emotionally involved with the hearing impaired patient to act impartially with the emotional detachment that is necessary of qualified sign language interpreters, particularly in medical settings and communications.

28.  Despite the law requiring accommodations to be provided to deaf individuals in a medical setting, plaintiffs Melinda Weinrib and Lance Weinrib were often forced into the role of an interpreter in an effort to try and facilitate communication for their father and medical staff. This was despite that the fact Melinda Weinrib and Lance Weinrib are Deaf themselves and the fact that it was completely inappropriate to force them to act in the role of an interpreter as they are not professional interpreters and needed to be there to emotionally support their father during his critical medical treatments. Plaintiffs, Lance J. Weinrib and Melinda Weinrib were essentially "robbed" of quality time with their father and were forced to interpret for him. Plaintiffs never even knew their father had cancer until after his death.

### STATEMENT OF FACTS AS TO WINTHROP-UNIVERSITY HOSPITALIZATION FROM 9/4/12-9/10/12 AND AS TO NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.

29. Alfred Weinrib was brought to Winthrop-University Hospital where he was a patient from September 4, 2012 through September 10, 2012 for treatment of a seizure. During this

hospitalization, Alfred Weinrib and Plaintiffs made requests for a qualified American Sign Language interpreter. It is confirmed in the medical records that on September 4, 2012 an interpreter was requested. Alfred Weinrib became very upset and aggravated when doctors and nurses would come in his room without a qualified interpreter and attempted to talk with him because he was unable to understand what was being said. Alfred Weinrib requested that the doctors and nurses write notes to him and the staff stated they would come back with a pad to write, but never did. When plaintiff, Melinda Weinrib came to the hospital and was told by her father that no effective communication was occurring between him and the hospital staff, she became upset and approached one of the nurses to ask why the hospital staff never returned to explain things to her father. No live interpreter was provided to Alfred Weinrib and Plaintiffs during this hospital visit. On only one occasion did the hospital staff even attempt to utilize the Video Remote Interpreting machine to ask questions of Mr. Weinrib when the doctor was present. However on this occasion, the screen was not clear and kept freezing, making the interpreter difficult or impossible to see.

30. Due to the lack of communication and no qualified Sign Language interpreter being provided by defendants, Melinda Weinrib was forced to unsuccessfully attempt to facilitate communication between the hospital staff and her father throughout his hospitalization. When Lance Weinrib came to defendants' hospital on September 9, 2012, he was also forced to unsuccessfully attempt to facilitate communication between the hospital staff and his father. Alfred Weinrib and Plaintiffs were often unable to understand Alfred Weinrib's diagnosis, prognosis, what medications were being given and what treatments were being performed on him during this hospitalization as no effective communication was able to take place without the aid of a qualified Sign Language interpreter. Alfred Weinrib and plaintiffs were also unable to

ask questions and fully participate in Alfred Weinrib's medical care in a manner in which they could understand. Alfred Weinrib and Plaintiffs also requested that a Videophone be provided in order so that Alfred Weinrib could communicate with his family and friends but this request was also denied by defendants. Plaintiffs were discriminated against and treated with deliberate indifference.

### STATEMENT OF FACTS AS TO THE ROSALIND AND JOSEPH GURWIN JEWISH GERIATRIC CENTER OF LONG ISLAND, INC. d/b/a GURWIN JEWISH NURSING & REHABILITATION CENTER, RESIDENCY FROM 9/10/12-11/16/12

31. On September 10, 2012 Alfred Weinrib was discharged from Winthrop-University Hospital to Gurwin Jewish Nursing & Rehabilitation Center where he became a resident. During Alfred Weinrib's residency from September 10, 2012 through November 16, 2012 Alfred Weinrib and plaintiffs made requests for a qualified American Sign Language interpreter in order for effective communication to take place during meetings and treatment which were to be performed. During this residency, plaintiffs were forced to unsuccessfully attempt to facilitate communication between the Nursing Home staff and their father. Alfred Weinrib and his family also requested a Videophone in order so that he could talk to his family during this residency but Defendants denied him a Videophone. The Nursing home would also hang up on Alfred Weinrib's friends and family when they attempted to contact him through the Video Relay service.

32. During this residency, Alfred Weinrib underwent psychological evaluations for depression, as well as attended Physical Therapy and Occupational Therapy all without the aid of a Sign Language interpreter. Alfred Weinrib and plaintiffs were often unable to understand what medications were being given to him, what the medications were for and why the medications were being given. In addition, Alfred Weinrib and plaintiffs were unable to understand what

treatments were being performed on him, as well as his prognosis and diagnosis throughout his residency at the Nursing Home. Despite requests for a qualified Sign Language interpreter the Nursing Home attempted to utilize a staff member who was not fluent in Sign Language, and not a qualified professional interpreter to try and facilitate communication with Alfred Weinrib, plaintiffs and the staff at the Nursing Home. When Alfred Weinrib and plaintiffs indicated that they did not want this staff member to interpret because she was not a qualified professional interpreter the staff continued to utilize her despite the repeated requests for a qualified Sign Language interpreter. Only on one occasion during Alfred Weinrib's two month residency at the Nursing Home did Defendants provide a qualified Sign Language interpreter. At all other times, Alfred Weinrib and plaintiffs were forced to try and unsuccessfully understand the care being given by the Nursing Home Staff on their own father. Alfred Weinrib was also forced to write back and forth with the staff at the Nursing Home which was very tedious, cumbersome and extremely difficult as his hands were weak from having multiple seizures.

33. As can be evidenced by the medical records from Gurwin Nursing Home & Rehabilitation Center there were numerous difficulties with communication. It is noted in the medical records repeatedly; "unable to express self clearly", "difficulty in articulating", "Resident has difficulty with communication secondary to highly impaired hearing due to congenital deafness". Due to this total breakdown in communication, errors were made in the medical history of Alfred Weinrib such as it being indicated that he had a pacemaker. In fact, defendant staff argued with Alfred Weinrib regarding this, forcing him to open his shirt to show the staff that he did not have a pacemaker. The Nursing Home was also unaware that Mr. Weinrib was on medication for cholesterol and they then had to discontinue other medication when they were made aware of this important medical information. These communication

difficulties led to Alfred Weinrib feeling depressed, frustrated, ashamed and humiliated causing him extreme emotional distress as he struggled to understand even basic information the staff was attempting to communicate to him during his two month residency.

### STATEMENT OF FACTS AS TO WINTHROP-UNIVERSITY HOSPITALIZATION FROM 9/13/12-9/14/12 AND AS TO NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.

34. On September 13, 2012, Alfred Weinrib was brought by ambulance to Winthrop-University Hospital for a seizure from Gurwin Jewish Nursing Home & Rehabilitation Center. During this hospitalization no interpreter was ever provided to Alfred Weinrib and plaintiffs. Therefore, no effective communication took place during this hospitalization despite requests being made for a qualified American Sign Language interpreter by Alfred Weinrib and Plaintiffs. It is confirmed in the medical records that on September 13, 2012 an interpreter was requested. Again, Alfred Weinrib and his family were unable to ask questions and fully participate in his medical care in a manner in which they could understand. Therefore, Plaintiffs were forced to attempt to facilitate communication between the hospital staff and their father throughout this hospitalization. Alfred Weinrib and Plaintiffs also requested that a Videophone be provided so that Alfred Weinrib could communicate with his family and friends but this request was also denied by defendants. Plaintiffs were discriminated against and treated with deliberate indifference. There was no live interpreter provided to Alfred Weinrib and Plaintiffs during this hospital visit. Alfred Weinrib was thereafter discharged from Winthrop-University Hospital on September 14, 2012 and returned to Gurwin.

## STATEMENT OF FACTS AS TO WINTHROP-UNIVERSITY HOSPITALIZATION FROM 10/1/12-10/2/12 AND AS TO NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.

35. On October 1, 2012, Alfred Weinrib was again brought by ambulance to Winthrop-University Hospital for a seizure from Gurwin. During this hospitalization a qualified Sign Language interpreter was requested but again no live interpreter was ever provided to Alfred Weinrib and plaintiffs in order for them to participate in Alfred Weinrib's medical care. Although the Video Remote Interpreting machine was brought into Alfred Weinrib's room, the hospital staff was unable to get it to work as they were not trained on how to utilize the machine. Therefore no effective communication took place during this hospitalization as no interpreter was provided to Alfred Weinrib and his family. Alfred Weinrib and Plaintiffs also requested that a Videophone be provided in order so that Alfred Weinrib could communicate with his family and friends but this request was also denied by defendants.

36. During this hospitalization at Winthrop, Dr. Rodriguez came to evaluate Alfred Weinrib and called Lance Weinrib as Dr. Rodriguez was frustrated and upset. Dr. Rodriguez asked Lance Weinrib how he was going to be able to communicate with Alfred Weinrib since he was Deaf. Plaintiffs then requested a qualified Sign Language interpreter be provided to facilitate communication. Dr. Rodriguez stated that Winthrop does not provide sign language interpreters. Lance Weinrib asked if Winthrop provided Spanish interpreters. Dr. Rodriguez responded affirmatively and then proceeded to hang up on him. Once again, Plaintiffs were denied their requests for effective communication between the hospital staff and their father throughout this hospitalization. Plaintiffs were discriminated against and treated with deliberate indifference. Alfred Weinrib was discharged from Winthrop-University Hospital to Gurwin Jewish Nursing Home & Rehabilitation Center on October 2, 2012.

### STATEMENT OF FACTS AS TO GOOD SAMARITAN HOSPITALIZATION FROM 12/22/12-12/30/12 AND AS TO CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC. d/b/a CATHOLIC HEALTH SERVICES OF LONG ISLAND

37. Alfred Weinrib was admitted on December 22, 2012 through December 30, 2012 at Good Samaritan Hospital Medical Center for a seizure. He was having trouble walking and was diagnosed at the hospital with Sepsis and Pneumonia. Although Alfred Weinrib was diagnosed with Pneumonia and Sepsis during this hospitalization, Plaintiffs never knew their father had Sepsis as effective communication did not take place between hospital staff and Alfred Weinrib and Plaintiffs without the aid of a Sign Language interpreter. When Alfred Weinrib was brought to the hospital, Plaintiff Lance Weinrib took a picture of the sign stating that if a Sign Language interpreter was needed to let the hospital know. When plaintiff, Lance Weinrib showed the picture to a nurse in the Emergency room she laughed at him, causing him to feel embarrassed and shameful. Alfred Weinrib and plaintiffs were treated at Good Samaritan with deliberate indifference and made to feel as though they were "deaf" and "dumb". The doctors were often impatient and would refuse to write things down in order to communicate with them, which completely left them in the dark regarding their father's care at defendants' hospital.

38.   On one occasion, Dr. Singh came in to show Lance Weinrib x-rays and tried unsuccessfully to explain through gestures that something was wrong with their father's abdomen area. When plaintiffs attempted to ask further questions to understand about the problem and what they needed to do about it, the doctor did not write any notes to Lance Weinrib and left without him having any real understanding of what was going on with his father. The doctor advised them not to worry and that he would return to answer all of their questions, but never did. Plaintiffs knew their father had trouble with his stomach but did not know anything else regarding his diagnosis.

39. Despite Alfred Weinrib and plaintiffs' repeated requests for a qualified Sign Language interpreter for this hospitalization, qualified interpreters were not provided by Good Samaritan in order for effective communication to take place. Once again, Plaintiffs were forced to attempt to facilitate communication between the hospital staff and their father throughout this hospitalization as no live interpreter was ever provided by Good Samaritan during this hospitalization. Alfred Weinrib and Plaintiffs also requested that a Videophone be provided so that Alfred Weinrib could communicate with his family and friends but this request was also denied by Good Samaritan.

### STATEMENT OF FACTS AS TO GOOD SAMARITAN HOSPITALIZATION FROM 2/13/13-2/20/13 AND AS TO CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC. d/b/a CATHOLIC HEALTH SERVICES OF LONG ISLAND

40. Alfred Weinrib was admitted to Good Samaritan Hospital Medical Center from February 13, 2013 through February 20, 2013 for low blood pressure. Although Alfred Weinrib and plaintiffs made requests for a qualified Sign Language interpreter for this hospitalization no interpreter was ever provided by defendants during this hospitalization in order for effective communication to take place. It was noted in the medical records on February 13, 2013 that there were serious communication problems: "The patient is confused and unable to provide history or answer questions about his health situation." It is also noted in the medical records during a consultation on February 13, 2013: "History is unobtainable from the patient as he is deaf and has non-understandable, non-interpretable speech. I tried two different numbers for the family, but was unable to reach anyone. Apparently the patient is deaf…" It is further noted in this consultation report: "No history is obtained involving the patient." Thus, the doctor during this consultation was unable to obtain any past medical history, past surgical history, his marital status, smoking status, alcohol status, family history as well as a review of systems.

41. On February 13, 2013, it was again noted in the medical records by a nurse that, "Pt's daughter called to obtain history." Due to these communication problems and no qualified sign language interpreter ever being provided despite repeated requests, Plaintiffs were forced to try and facilitate communication between their father and the hospital staff during this hospitalization as this is confirmed in the medical records. The hospital failed to provide Alfred Weinrib and plaintiffs with a qualified interpreter and a Videophone in order to be able to communicate with his family and friends. Thus, defendants failed to provide any effective communication during this hospitalization leading to extreme frustration, humiliation and emotional distress.

**STATEMENT OF FACTS AS TO THE ROSALIND AND JOSEPH GURWIN JEWISH GERIATRIC CENTER OF LONG ISLAND, INC d/b/a GURWIN JEWISH NURSING & REHABILITATION CENTER RESIDENCY FROM 2/20/13-3/12/13**

42. Alfred Weinrib was again a resident at Gurwin Jewish Nursing Home & Rehabilitation Center from February 20, 2013 through March 12, 2013. During this residency Alfred Weinrib was placed on the second floor where the nurses and doctors were impatient with him and treated him unkindly. During his first day at the Nursing Home the nurses were very rough with him because of their frustration with the lack of communication. When Melinda Weinrib visited the following day, her father told her about the nurses being rough with him and impatient. Alfred Weinrib also told plaintiff, Melinda Weinrib that his body was sore and that he was fed up with the way he was being treated. Her father constantly complained to Melinda Weinrib about the frustration he felt with no effective communication being provided to him by the Nursing Home as his and Plaintiffs' requests for a qualified Sign Language interpreter went ignored. Alfred Weinrib and his family also requested a Videophone during this residency so that he could talk to his family and friends but Defendants denied him a Videophone. This left Alfred

Weinrib feeling isolated and alone without any communication being provided to him in a manner in which he could understand, which then led to even greater depression and frustration.

43. The Nursing Home staff during this residency kept asking Alfred Weinrib if he had any pain in his stomach which also led to frustration for Alfred Weinrib as he had no idea why he was constantly being asked this question. Although, the Nursing Home staff had full knowledge as to diagnosis and prognosis of Alfred Weinrib, he and Plaintiffs never meaningfully knew what was wrong as no one explained anything to them in a manner in which they could understand. Entries in the medical records indicate the problems with the communication and the frustration felt by Alfred Weinrib when he was unable to communicate with the staff at the Nursing Home; "…gets easily frustrated when not understood…", "Difficulty in articulating, Unable to express self clearly. Hearing loss affects speech."

44. On February 25, 2013, Alfred Weinrib tried to call for the nurses using the call button as he had to go to the bathroom. He waited a very long time and attempted to get out of bed on his own, but was unsuccessful. When the nurse finally showed up and Alfred Weinrib asked for help, the nurse ignored him. Thereafter, according to the progress notes from the Nursing Home, sometime between 9:30 a.m. and 10:00 a.m. Alfred Weinrib was found by an aide who then called a nurse for help since he was found with the call bell cord wrapped around his neck. However, all Alfred Weinrib wanted was the staff to pay attention to him and to provide an interpreter so that he would not have to constantly feel frustrated and helpless when he was attempting to convey a simple request such as being taken to the bathroom.

45. Plaintiffs were not called about this incident, which the staff stated was an attempted suicide until 2:45 p.m. Although the incident occurred sometime between 9:30 a.m. and 10:00 a.m., Plaintiffs rushed to the Nursing Home to be with their father as soon they were provided

this information. Plaintiffs would have wanted to immediately be with their father during his time of crisis had they known about this incident sooner.

46. Upon arriving at the Nursing Home they communicated with the staff through handwritten notes as even during this extremely critical situation a qualified American Sign Language interpreter was not provided. Alfred Weinrib was even assessed by the Social Worker without the aid of a qualified sign language interpreter present on this date. When Plaintiffs questioned Dr. Daoud about why they were not called immediately following this incident, Dr. Daoud wrote in a note to plaintiffs: "I was aware in the morning indeed. But he was in Therapy. Therefore, I could not see him right away…If it is not a matter of death I would not call you right away. Because there were other emergencies…The nurses had somebody watch on him 1:1. Notice I spent almost 2 hours with you!"  From this note it can be determined that the Nursing Home failed to contact Plaintiffs immediately following an emergency which could have meant life or death and then discriminated against Plaintiffs when they were advised that the doctor spent two hours with her.

## STATEMENT OF FACTS AS TO SOUTHSIDE HOSPITALIZATION FROM 2/25/13-2/26/13

47. Plaintiff Alfred Weinrib was brought to Southside Hospital on February 25, 2013 where he was given a psychological evaluation with the aid of an American Sign Language Interpreter. When he was discharged on February 26, 2013 he was transferred back to Gurwin Jewish Nursing & Rehabilitation Center. In the discharge instructions it was noted, "consider access to interpreter for patient's needs."

**STATEMENT OF FACTS AS TO GOOD SAMARITAN
HOSPITALIZATION FROM 3/12/13-3/28/13 AND AS TO
CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC.
d/b/a CATHOLIC HEALTH SERVICES OF LONG ISLAND**

48. Alfred Weinrib was admitted on March 12, 2013 to Good Samaritan Hospital where he was diagnosed with Sepsis, Pneumonia and Sigmoid volvulus. Alfred Weinrib and plaintiffs never knew that he had an enlarged colon as none of the diagnosis and prognosis of these ailments was fully explained to them. Alfred Weinrib and plaintiffs made repeated requests for interpreters during this hospitalization which were initially denied by defendants. It is noted in the medical records: "The patient is deaf and unable to obtain any history from him…He is awake and alert and follows simple commands." It is further noted: "History is obtained from the chart as the patient is deaf and history must be obtained from the patient through a sign language interpreter" and "Difficult to communicate due to pt being deaf, but follows simple commands."

49. However, after having repeated problems with the video relay interpreter machine and being repeatedly and continuously denied an interpreter by doctors and staff, the plaintiffs demanded once again that defendant arrange for an interpreter to be provided. Plaintiffs were finally, after weeks of repeated requests, provided with interpreters during the remainder of this hospitalization at Good Samaritan Hospital. Unfortunately, Alfred Weinrib could not meaningfully benefit from the use of the interpreter as he was close to his death and in a coma-like state during the remainder of the hospitalization. Prior to this, plaintiffs were forced to attempt to facilitate communication between the hospital staff and their father throughout this hospitalization. Alfred Weinrib and Plaintiffs also requested that a Videophone be provided so that Alfred Weinrib could communicate with his family and friends but this request was also denied by defendants. Alfred Weinrib was transferred to Hospice on March 28, 2013 and passed away on April 4, 2013 from Cardiopulmonary Arrest and Metastatic Malignant Melanoma.

50. Throughout Alfred Weinrib's numerous hospitalizations and the residency at the Gurwin, Plaintiffs were never informed by any Defendants that their father had cancer. Recently, Plaintiffs went through their father's belongings and found a card from Good Samaritan Hospital that said "Congratulations, you are a cancer survivor". However, this was false as Alfred Weinrib had cancer and died. All of the miscommunication and communication that was lost could have been avoided if Defendants had just followed the law and provided reasonable accommodations to Alfred Weinrib and plaintiffs so that effective communication could have taken place.

51. Alfred Weinrib and Plaintiffs were ignored, humiliated and treated like non-persons by Defendants. Defendants' actions and inactions resulted in Alfred Weinrib and Plaintiffs being irretrievably denied the complete understanding of the care Alfred Weinrib received while at Defendants' facilities. Instead, Alfred Weinrib and Plaintiffs experienced shame, anxiety, frustration, extreme emotional distress, fear and discrimination. Further, all of Alfred Weinrib's care was made more difficult and painful by his and Plaintiffs' inability to communicate with the nursing staff and doctors in a manner in which they could understand. Due to the extreme emotional distress that Alfred Weinrib experienced during all of the events described above, he became extremely depressed which was directly due to his inability to communicate with defendants as no effective communication could have been provided without the aid of a qualified Sign Language interpreter.

52. Defendants' willful, knowing and repeated acts of intentional discrimination/deliberate indifference against Alfred Weinrib and plaintiffs evidences a pattern and practice of discrimination that is in violation of the New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq., the ADA and the Rehabilitation Act and

caused plaintiffs to suffer and continue to suffer mental and emotional pain and anguish. The Estate of Alfred Weinrib and Plaintiffs now bring this action to remedy the illegal discrimination that occurred against Alfred Weinrib and Plaintiffs by Defendants.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(NEW YORK HUMAN RIGHTS LAW VIOLATIONS)**

53. Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

54. At all times relevant to this action, the New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq. was in full force and effect and applied to Defendants' conduct.

55. At all times relevant to this action, Alfred Weinrib had and Plaintiffs have a significant hearing impairment and are qualified individuals with a disability within the meaning of the Article 15 of the New York Executive Law § 292(21).

56. At all times relevant to this action, Defendants' Facilities are places of public accommodation within the meaning of Article 15 of the New York Executive Law § 292(9). Article 15 of the New York Executive Law § 296(2)(a) states in relevant part as it pertains to persons with disabilities that:

> "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of ...disability... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place hall be refused, withheld from or denied to any person on account of ... disability... or that the patronage or custom thereat of any person of or purporting to ... having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

57. Defendants' failure to provide Plaintiffs with full and equal enjoyment of facilities, privileges, advantages, or accommodations is in violation of its obligations under the New York Human Rights Law and has directly injured, and continues to injure, Plaintiffs.

58. Defendants' violations of the New York Human Rights Law mentioned above directly caused Alfred Weinrib to sustain injuries and Plaintiffs to sustain past and continuing injuries. Alfred Weinrib suffered and Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendants' discriminatory actions and policies, as hereinbefore alleged and Defendants' continuing pattern and practice of discrimination.

59. Defendants' illegal discriminatory conduct as hereinbefore alleged constituted a reckless disregard of Alfred Weinrib's and Plaintiffs' protected rights under State law, and has intentionally, willfully and maliciously caused Alfred Weinrib and Plaintiffs humiliation, embarrassment and emotional pain and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION
### (ADA VIOLATIONS)

60. Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

61. At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.* was in full force and effect and applied to Defendants' conduct.

62. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

63. At all times relevant to this action, Alfred Weinrib had and Plaintiffs have a significant hearing impairment and are qualified individuals with a disability within the meaning

of Title III of the ADA, 42 U.S.C. §12102 (2).

64. At all times relevant to this action, Defendants' facilities are places of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7).

65. The objective of the ADA is to eliminate discrimination against individuals with disabilities. Section 302(a) of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination "on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

66. 42 U.S.C. § 12182(b)(1)(E) states that it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

67. Section 302(b)(2)(A)(iii) of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), provides that discrimination under the ADA further includes "the failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" as defined under § 12102(1)(A) of the ADA. The term "auxiliary aids and services" under the ADA includes "qualified interpreters" who make "aurally delivered materials available to individuals with hearing impairments."

68. Defendants' failure to provide Alfred Weinrib and Plaintiffs with full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations thereof is in violation of its obligations under the ADA directly injured Alfred Weinrib and Plaintiffs, and continues to injure, Plaintiffs.

69. Defendants' violations of the ADA mentioned above directly caused Alfred Weinrib to sustain injuries and Plaintiffs to sustain past and continuing injuries. Alfred Weinrib suffered and Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendants' actions and policies, as hereinbefore alleged and Defendants' continuing pattern and practice of discrimination.

70. Defendants' illegal discriminatory conduct as hereinbefore alleged constitutes a reckless disregard of Alfred Weinrib and Plaintiffs' protected rights under Federal Law, and has intentionally, willfully and maliciously caused Alfred Weinrib and Plaintiffs humiliation, embarrassment and emotional pain and suffering.

71. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries, loss, intentional discrimination and deliberate indifference they sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged.

72. Plaintiffs are further entitled to an award of attorney's fees and costs and disbursements pursuant to the A.D.A, 42 U.S.C. 12188(a)(1) and/or common law.

73. Consequently, Alfred Weinrib and Plaintiffs sustained mental and emotional injuries, emotional distress and damage, and were caused to experience extreme fear, anxiety, and depression, and have incurred attorney's fees and costs in seeking vindication of their rights, together with compensatory damages in a sum to be determined by the trier of fact.

## AS AND FOR A THIRD CAUSE OF ACTION
## (REHABILITATION ACT VIOLATIONS)

74. Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

75.  At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to the Defendants' conduct.

76.  At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendants' conduct.

77.  At all times relevant to this action, Alfred Weinrib had and Plaintiffs have significant hearing and speech impairments and a "handicapped person" within the meaning of the Rehabilitation Act including its regulation, at 45 C.F.R. § 84.3(j), and an "otherwise qualified individual with a disability" within the meaning of the Rehabilitation Act including regulation, 45 C.F.R. § 84.3(k).

78.  At all times relevant to this action, upon information and belief Defendants were recipients of federal funds within the meaning of the Rehabilitation Act.

79.  Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides:

> No otherwise qualified individual with a disability in the United States. . . shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

80.  The United States Department of Health and Human Services regulations expressly provide that in the provision of health, welfare, or other social services, a program benefitting from federal financial assistance may not deny an individual with a disability benefits and services, or provide them with benefits and services not as effective as those offered to others. 45 C.F.R. § 84.52(a)-(d).  Under the federal regulations, a recipient of federal assistance must provide auxiliary aids and services, including qualified sign language interpreters and TTY's, to deaf individuals.

81. Defendants' failure and refusal to ensure effective communication with Alfred Weinrib and Plaintiffs discriminates against them on the basis of disability in violation of Section 504 of the Rehabilitation Act.

82. Defendants intentionally discriminated against Plaintiffs and treated them with deliberate  indifference to their need for effective communication.

83. Defendants, their agents, servants and employees violated HHS's regulations, 45 C.F.R. § 84.52(a) - (d) because they deprived Alfred Weinrib and Plaintiffs receipt of benefits and services in provision of health, welfare, and other social services and also provided disparate medical treatment compared to treatment offered non-disabled individuals. In further violation of the aforementioned HHS regulations, Defendants, their agents, servants and employees failed to provide Alfred Weinrib and Plaintiffs with auxiliary aids and services, including qualified sign language interpreters.

84. Defendants refused to provide Alfred Weinrib and Plaintiffs with effective communication because of Alfred Weinrib and Plaintiffs' disability in violation of the Rehabilitation Act and federal regulations, which directly caused Alfred Weinrib and Plaintiffs to sustain past and continuing physical and emotional injuries.

85. Defendants' violations of the Rehabilitation Act and the Regulations promulgated thereunder as mentioned above directly caused Alfred Weinrib to sustain past physical and emotional injuries and Plaintiffs to sustain past and continuing physical and emotional injuries. Alfred Weinrib suffered and Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendants' actions, as hereinbefore alleged and Defendants' continuing pattern and practice of discrimination.

86.  Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged.

87. Defendants' conduct as hereinbefore alleged constitutes a reckless disregard of Alfred Weinrib and Plaintiffs' protected rights under Federal Law, and has willfully and maliciously caused Alfred Weinrib and Plaintiffs humiliation, embarrassment, mental and emotional pain and suffering, for which Plaintiffs are entitled to recover compensatory damages from Defendants.

88.  Plaintiffs are further entitled to an award of attorney's fees and costs and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. 794 et seq. and/or common law.

89. Consequently, Alfred Weinrib and Plaintiffs sustained intentional discrimination, mental and emotional injuries, emotional distress and damage, and were caused to experience extreme fear, anxiety, and depression, and have incurred attorney's fees and costs in seeking vindication of their rights, together with punitive damages in a sum to be determined by the trier of fact.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (INJUNCTIVE RELIEF)

90.  Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs of this complaint.

91.  At all times relevant to this action, plaintiff, Lance J. Weinrib has resided, now resides and intends to continue residing at 56 Chuck Boulevard, North Babylon, New York.

92. At all times relevant to this action, plaintiff, Melinda M. Weinrib has resided, now resides and intends to continue residing at 46 Glasgow Avenue, Deer Park, New York.

93. The violations of laws committed by the defendants as hereinbefore set forth occurred beginning September 4, 2012 and, upon information and belief, will continue unless the

defendants are enjoined from committing such violations in the future against Plaintiffs as well as other deaf individuals.

94. As such, plaintiffs will sustain irreparable damage if defendants' continued violations of law as hereinbefore set forth are not enjoined.

95. Plaintiffs have no adequate remedy at law with respect to continued violation of the law by the defendants herein.

96. Plaintiffs are thereby entitled to injunctive relief compelling defendants to supply to them, and all hearing impaired patients at defendants' facilities, the reasonable accommodations to which they are entitled under State and Federal Law, including but not limited to Sign Language interpreters.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendants, jointly and severally for the following:

97.   Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures subjected Alfred Weinrib and have subjected Plaintiffs to discrimination in violation of New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq., Section 504 of the Rehabilitation Act, and Title III of the Americans with Disabilities Act.

98.   Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiffs equal access to, and benefit from Defendants' services or which deny Plaintiffs effective communication with Defendants. Enter a permanent injunction ordering Defendants:

A. To cease discrimination against Plaintiffs and other deaf or hard of hearing patients;

B. To promulgate and comply with policies and procedures to ensure that Defendants and its staff do not discriminate against individuals who are deaf and hard of hearing;

C. To promulgate and comply with procedures to ensure that Defendants will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendants;

D. To promulgate and comply with procedures to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, Videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons.

E. That all of defendants' facilities and all related facilities be provided with appropriate training to its personnel, including their physicians, medical and nurse assistants to ensure their familiarity, set up and how to utilize the Video Remote Interpreting Machine.

99. Award compensatory and punitive damages;

100. Award reasonable costs and attorneys' fees; and

101. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

EISENBERG & BAUM, LLP

By: _____

Eric M. Baum, Esq. (EB-5493)
ebaum@EandBlaw.com

Andrew Rozynski, Esq. (AR-2870)
arozynski@EandBlaw.com

Attorneys for Plaintiffs
Office and Post Office Address
24 Union Square East, Fourth Floor
New York, NY  10003
(212) 353-8700