**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LANCE J. WEINRIB, Individually, and as
Executor of the Estate of Alfred Weinrib and
MELINDA M. WEINRIB,

                              Plaintiffs,

             - against -

WINTHROP-UNIVERSITY HOSPITAL,
THE ROSALIND AND JOSEPH GURWIN
JEWISH GERIATRIC CENTER OF LONG
ISLAND, INC., doing business as GURWIN
JEWISH NURSING & REHABILITATION
CENTER, GOOD SAMARITAN HOSPITAL
MEDICAL CENTER, NEW YORK-
PRESBYTERIAN HEALTHCARE SYSTEM,
INC., and CATHOLIC HEALTH SYSTEM
OF LONG ISLAND, INC., doing business as
CATHOLIC HEALTH SERVICES OF
LONG ISLAND,

                            Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 14-953 (JFB) (AKT)

### I.    PRELIMINARY STATEMENT

      This action is brought by Plaintiffs Lance J. Weinrib, individually and as Executor of the Estate of Alfred Weinrib, and Melina M. Weinrib (collectively the "Plaintiffs") against Defendants Winthrop University Hospital ("Winthrop"), The Rosalind and Joseph Gurwin Jewish Geriatric Center of Long Island, Inc. d/b/a Gurwin Jewish Nursing & Rehabilitation Center ("Gurwin"), Good Samaritan Hospital Medical Center ("Good Samaritan"), New York-Presbyterian Healthcare System, Inc., and Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island (collectively, the "Defendants"), asserting claims under the Americans with Disabilities Act of 1973, 42 U.S.C. §§ 1201 *et. seq.* ("ADA"), its

implementing regulation, 28 C.F.R. Part 36, the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et. seq.*, the New York State Human Rights Law ("NYSHRL"), Article 15 of the N.Y. Executive Law §§ 290 *et. seq.*, as well as other state laws and common law.

Presently before the Court is Plaintiffs' letter motion seeking to compel answers to certain deposition questions posed to Defendant Winthrop's Rule 30(b)(6) witness, Jean Zebroski ("Zebroski"), at Winthrop's deposition on May 8, 2015. The motion also seeks fees and sanctions against Defendants for "obstruct[ing] the proceedings." *See* DE 55. Defendants oppose Plaintiffs' motions on the grounds that the objections asserted by Defendant Winthrop's counsel at the deposition were warranted. *See* DE 56. For the reasons that follow, Plaintiffs' motion to compel and for attorney's fees and expenses is GRANTED, in part, and DENIED, in part.

## II. DISCUSSION[1]

### A. Motion to Compel Deposition Testimony

#### 1. *Applicable Law*

In general, discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Bristol-Myers Squibb Co. v. Rhone-Poulenc River, Inc.*, No. 95 CIV. 8833, 1998 WL 2829, at *2 (S.D.N.Y. Jan. 6, 1998). Depositions by oral examination are governed by Rule 30 of the Federal Rules of Civil Procedure. The proper procedure for interposing objections during a deposition is set forth in Rule 30(c)(2) which states that

---

[1] The Court dispenses with a recitation of the factual background underlying the instant action in light of the fact the motions do not go to the merits of Plaintiffs' claims.

> An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). The Rule makes clear that once an objection is noted for the record the examination proceeds and the testimony of the deponent is taken subject to the objection. *Id.*; *see Gould Investors, L.P. v. General Ins. Co. of Trieste & Venice*, 133 F.R.D. 103, 104 (S.D.N.Y. 1990); *Luc Vets Diamant v. Akush*, No. 05 Civ. 2934, 2006 WL 258293, at *1 (S.D.N.Y. Feb. 3, 2007); *T.Z. v. City of New York*, CV-05-511, 2008 WL 544707, at *4 (E.D.N.Y. Feb. 26, 2008). Further, counsel "may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)[3]." *Gould Investors, L.P.*, 133 F.R.D. at 104 (quoting Fed. R. Civ. P. 30(c)(2)) (emphasis added); *see also U.S. ex rel. Tiesinga v. Dianon Sys., Inc.*, 240 F.R.D. 40, 43 (D. Conn. 2006) ("Ordinarily, it is improper for counsel to direct a witness not to answer a question posed at a deposition, even if the question is improper or beyond the scope of a deposition notice."). At least one court has observed that "[t]hese rules properly recognize that '[d]irections to a deponent not to answer a question can be even more disruptive than objections.'" *U.S. ex rel. Tiesinga*, 240 F.R.D. at 43 (quoting Fed. R. Civ. P. 30 Advisory Committee's Note to 1993 Amendments).

It follows from the directive set forth in Rule 30(c)(2) that lack of relevancy is not a proper basis for instructing a witness not to answer deposition questions. *Luc Vets Diamant v. Akush*, 2006 WL 258293, at *1; *Chloe Shipping Corp. v. Mediterranean Shipping Co.*, No. 97

Civ. 6764, 1999 WL 675985, at *1 (S.D.N.Y. Aug. 30, 1999); *HCC, Inc. v. RH & M Machine Co.*, No. 96 Civ. 4920, 1997 WL 675334, at *2 (S.D.N.Y. Oct. 30, 1997); *Kelly v. A1 Technology*, No. 09–CV–962, 2010 WL 1541585, at *20 (S.D.N.Y. April 12, 2010); *Calderon v. Symeon*, No. 06–CV–1130, 2007 WL 735773, at *2 (D. Conn. Feb. 2, 2007) (directing pro se party to answer all deposition questions unless she was asserting a privilege); *Balk v. New York Inst. of Tech.*, No. CV 11-509, 2012 WL 5866233, at *2 (E.D.N.Y. Nov. 19, 2012).

When a witness refuses to answer a question during a deposition, "the questioning party may subsequently move to compel disclosure of the testimony that it sought." *Kelly*, 2010 WL 1541585, at *20 (citing *Luc vets Diamant*, 2006 WL 258293, at *2). "The court must determine the propriety of the deponent's objection to answering the questions, and can order the deponent to provide improperly withheld answers during a continued deposition." *Id.*; *see Balk*, 2012 WL 5866233, at *1.

### 2. *Application to the Facts*

Plaintiffs' counsel highlights three specific instances during the deposition of Jean Zebroski where Attorney Rozynski claims opposing counsel inappropriately directed the witness not to answer a particular question. *See* DE 55. The Court will review each instance in turn.

The **first** instance arose during the following inquiry:

| | |
|---|---|
| Q: | As far as your knowledge, are there questions and answers in that blue book that relate to providing services for the deaf at the hospital? |
| A: | There is. |
| Q: | Do you recall what those questions are? |
| A: | I believe the question is what type of service or what type of service is provided to a hearing impaired patient or how do you access services for a hearing impaired patient. Then it, |

4

      specifically, details the process by which services are accessed
      through the help desk, for obtaining a Deaf Talk computer on
      wheels.

| | |
|---|---|
| Q: | Are you or the hospital aware that the phrase "hearing impaired" is considered offensive by the deaf community? |
| [Def.'s Counse]: | Objection. Direct her not to answer it. Move on, Counsel. Don't answer the question. Move on. Next question. |

May 8, 2015 Deposition of Winthrop-University Hospital, by Jean Zebroski ("Zebroski Dep.")

[DE 55-1] at 77-78. This exchange prompted further inquiry:

| | |
|---|---|
| [Pls.' Counse]: | Is that privileged or? |
| [Def.'s Counsel]: | I direct her not to answer. Move on. |
| [Pls.' Counsel]: | Under what basis? |
| [Def.'s Counsel]: | I direct her not to answer. Move on. You can mark it for a ruling and pick it up with the Magistrate Judge at the appropriate time. I note for the record, you have seven hours to complete the deposition. You have now wasted three hours of it. |
| [Pls.' Counse]: | "Wasted,?" |
| [Def.'sCounsel]: | Yeah, because you are only going to have topics on the floor, so I suggest that you ask questions that are relevant and not inflammatory. |
| [Pls.' Counsel]: | We are going to mark that for a ruling. |

*Id*. at 77-78. Plaintiffs' counsel asserts that his initial question concerning Winthrop's awareness whether the term "hearing impaired" is considered offensive is "relevant as pertains to the deliberate indifference standard for Plaintiffs' Rehabilitation Act claim" and that in any event, even if relevancy were lacking, it was still improper for Winthrop's counsel to direct the witness not to answer. *See* DE 55 2-3. In response, Defendant's counsel states that "[w]hether or not the Hospital is aware that a segment of the deaf community may or may not consider the term

5

'hearing impaired' to be offensive is wholly irrelevant . . . and was asked in a manner designed to embarrass or harass. . . ." *See* DE 56 at 2.

After reviewing the excerpts of the Zebroski deposition transcript as well as the parties' motion papers, the Court finds that the directive to witness Zebroski not to answer the question at issue was improper. Counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)[3]" *Gould Investors, L.P.*, 133 F.R.D. at 104; *see also U.S. ex rel. Tiesinga*, 240 F.R.D. at 43. Winthrop's counsel did not assert the existence of a privilege or any limitation directed by the Court which would warrant such direction. Further, although Winthrop's counsel makes reference in his opposition to Rule 30(d)(3), *see* DE 56 at 1 n. 1, — which provides an aggrieved party with the ability to move at any time during the deposition to terminate or limit the examination on the grounds that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the deponent — Winthrop's counsel did not take such action at any time during the deposition. *See Severstal Wheeling Inc. v. WPN Corp.*, No. 10 CIV. 954, 2012 WL 1982132, at *2 (S.D.N.Y. May 30, 2012) (recognizing that where counsel directed witness not to answer questions during deposition because they were "plainly irrelevant" or "designed to harass," counsel "should have either sought a ruling to terminate the deposition [pursuant to Rule 30(d)(3)] or obtained opposing counsel's agreement to defer such an application until the conclusion of whatever questions remained to be asked in the deposition. [Counsel] was not free simply to pepper the proceeding with interruptions and directions not to answer."). In addition, after reviewing the transcript, the Court does not find the manner in which Plaintiffs' counsel posed the question to be inflammatory. Further, Winthrop's argument that the question was "wholly irrelevant" is similarly without merit since, as noted above,

relevance or the lack thereof does not provide a basis to direct a witness not to answer a question. *See Luc Vets Diamant*, 2006 WL 258293, at *1; *Balk*, 2012 WL 5866233, at *2; *Severstal Wheeling Inc.*, 2012 WL 1982132, at *2 (noting that "it is hardly ever appropriate to instruct a witness not to answer on the ground of relevance"). In sum, the Court finds that notwithstanding the marginal relevance of the inquiry, the witness should have answered the question.

The **second** instance giving rise to the instant motion involves questioning by Plaintiffs' counsel regarding auxiliary services provided to those with hearing difficulties as contained in Winthrop's Patient Guidebook. Specifically, Plaintiffs' counsel posed the following questions to witness Zebroski:

> Q: What is this document?
>
> A: It is our patient guide book, the hospital's patient guide book.
>
> Q: Is this given to all patients?
>
> A: Upon admission, yes.
>
> Q: Does this talk about how one could get auxiliary services for effective communication?
>
> A: It does on page 13.
>
> Q: By 13?
>
> A: Sorry.
>
> Q: Referring to?
>
> A: 539.
>
> Q: So does it – do these materials tell you where you can get auxiliary or aided services?
>
> A: It states that you [*sic*] hearing impaired patient my [*sic*] obtain a TDD or volume control device by calling the telephone number

|                    | 2457 which is the T B telephone rental number or any other time, the hospital operator. |
|---|---|
| Q: | So if a person is deaf and doesn't have access to a TDD, how can they call extension 2457 or dial 0? |
| A: | If their family member is with them and reading this which often happens they can do it or the patient would show this to a staff member and a staff member would be able to access the service for them. |
| Q: | So if the whole family is deaf, they should – |
| [Def.'s Counsel]: | Don't Answer this question. |
| [Pls.' Counsel]: | What question? |
| [Def.'s Counsel]: | The question is as is being posed is argumentative. Move on. |
| [Pls.' Counsel]: | "Argumentative?" |
| [Defs.' Counsel]: | Go ahead. Next question. |
| [Pls.' Counsel]: | Mr. Breitenbach [Winthrop's counsel] you know, if your instruction is not to answer, it's highly improper and you can object to form, but you can't object to my questioning and continue this. We will be writing a letter to the Judge. |
| [Def.'s Counsel]: | Feel free to do so. |
| [Pls.' Counsel]: | Mark it for a ruling. |
| Q: | Are you saying that it's a deaf person's responsibility, if they do not have access to a phone, to show this to a staff member to get access to a TDD? |
| [Def.'s Counsel]: | Objection. You may answer. |
| A: | If a request is made to the staff for any type of device, the staff will fulfill the request, so the request could be made through a sign language Interpreter it could be made by pointing out this section of the book, it could be made by making the request in writing. |

| Q: | These other options are not listed in this section; is that correct? |
|---|---|
| A: | No, it's not specifically written here. |

*Id.* at 109-111.

Plaintiffs' counsel asserts that Winthrop's attorney did not permit him the opportunity to ask the complete question before interrupting and directing the witness not to answer. *See* DE 55 at 3. Had Plaintiffs' counsel been able to make the full inquiry, he maintains that the question would not have been inflammatory. In any event, counsel contends it was improper for Winthrop's attorney to direct the witness to refrain from providing an answer. *Id*. In opposition, Winthrop's counsel asserts that the witness's prior answers concerning this line of questioning were clear and therefore the question posed by Plaintiffs' counsel "which merely sought to argue with the witness over technical language of the Hospital's patient guidebook, was patently improper." *See* DE 56 at 2.

At the outset, the Court points out that Winthrop's counsel did not interpose a proper objection to the question being asked by Plaintiffs' counsel at any point during the colloquy. Indeed, Plaintiffs' counsel was not even permitted to finish the question. Thus, even had Winthrop's counsel interposed a valid objection such objection would have been premature. The Court similarly finds Winthrop's argument — that Plaintiffs' counsel was disagreeing over technical language in the Patient Guidebook and thus the question was improper — to be without merit since the transcript fails to bear this out. Taken in context, the Court finds that this line of questioning was relevant and even if the relevance was limited, the directive by Winthrop's counsel not to answer the question was inappropriate. *See* Rule 30(c)(2). Again, Winthrop's counsel failed to follow the procedure prescribed in Rule 30 for interposing objections. The Rule

makes clear that once a question is asked the opposing party can interpose an objection — which must be stated concisely and noted on the record. *See id*. At that point, the deposition proceeds and the witness answers the question, the objection having been preserved. *Id*. Only in the event that the question implicates a privilege or is posed in derogation of a limitation directed by the court — or where counsel seeks to present a motion under Rule 30(d)(3) — may counsel then direct the witness not to answer the question. After reviewing the transcript, the Court finds that none of the explicit circumstances identified by Rule 30(c)(2) were implicated by the question asked in this section of the testimony.

The **third** series of questions giving rise to this motion was directed to prior complaints (presumably of disability discrimination) Defendant Winthrop had received. Defendant's counsel characterizes the questions as ones "regarding the [witness'] preparation for her deposition." DE 56 at 2. The following series embodies the dispute:

| | |
|---|---|
| Q: | You have a complaint file? |
| A: | Not with me. |
| Q: | But at the [] Winthrop University Hospital? |
| A: | Yes. |
| Q: | Where is this located? |
| A: | In my office. |
| Q: | Did you produce those to your attorney? |
| [Def's. Counsel]: | Objection. I direct her not to answer. Attorney work product. |
| [Pls.' Counse]: | When she produced documents to you? |
| [Def's. Counsel]: | Absolutely. We are not going into the thought process of a court order. As your next question |

10

| | |
|---|---|
| [Pls.' Counsel]: | Mark that for a ruling. |
| Q: | When is the last time you looked in that database for complaints from deaf individuals? |
| [Def.'s Counsel]: | I am going to direct her not to answer. |
| [Pls.' Counsel]: | On what basis? |
| [Def.'s Counsel]: | Attorney work product. |
| [Pls.' Counsel]: | It has nothing to do with attorney work product. |
| [Def.'s Counsel]: | Ask your next question. You know the procedure. If you have problem with it, you can make a motion to compel. |

Zebroski Dep. at 118-120.

Plaintiffs' counsel asserts that he is unclear how "asking the deponent about reviewing her own files could implicate attorney work product . . . [since] Defense counsel did not prepare the documents at issue, and indeed none of the documents were prepared or organized 'in anticipation of litigation.'" *See* DE 55 at 3. In response, Winthrop's counsel states that "the questions posed by Plaintiffs' counsel clearly call for information protected by the work product doctrine. Ms. Zebroski's decision to turn over documents to her attorneys, and her actions in reviewing the specific complaints in her file, were informed by and done at the direction of counsel based upon our analysis of this case." *See* DE 56 at 2-3.

The so-called "work product privilege" is codified in Federal Rule of Civil Procedure 26(b)(3) which provides, in part, as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable . . . ; and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot,

> without undue hardship, obtain their substantial equivalent by other means.
>
> . . . .
>
> If a court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation. Fed. R. Civ. P. 26(b)(3).

Essentially, the work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003)); *see also United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir. 1998) (noting that "work product privilege 'is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries") (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). The party asserting the privilege bears the "heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F. 3d at 183.

"Because the work product protection arises only for materials 'prepared in anticipation of litigation,' the doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'" *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015) (quoting *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)). Significantly, work product protection does not apply to "documents that are prepared in the ordinary course of business or that would have been

created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation. . . ." *Adlman*, 134 F.3d at 1202. In making a determination, a court must ask "not merely whether [the party invoking the privilege] contemplated litigation when it generated the materials at issue, but rather whether these materials 'would have been prepared in essentially similar form irrespective of litigation.'" *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (quoting *Adlman*, 134 F.3d at 1204).

The burden of establishing that the doctrine applies rests on the party asserting the privilege, and, as such, it is that party who is tasked with showing what "would have" happened in these circumstances. *Wultz*, 2015 WL 362667, at *11. As the court noted in *Allied Irish Banks*,

> it is not easy for a factfinder to determine what "would have" happened in some hypothetical situation. . . . Nonetheless, this is the question that the *Adlman* test requires us to answer and it is an exercise that courts have regularly performed.

240 F.R.D. at 106; *see Verizon Directories Corp. v. Yellow Book USA, Inc.*, No. 04-CV-251, 2004 WL 4054842, at*2 (E.D.N.Y. July 22, 2004) (e-mail released where no showing made that it would not have been created in essentially similar form irrespective of the litigation); *DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, No. 04 Civ. 4099, 2006 WL 357825, at *1 (S.D.N.Y. Feb. 15, 2006) (documents created by management consultant not work product where consultant "would have created" them in similar form "even if the potential for litigation had been remote"); *In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*, No. 03 Civ. 4304, 2005 WL 1473925, at *1 (S.D.N.Y. June 22, 2005) (factual statement prepared following collision of

boats not work product where "business reasons for obtaining a statement from their captains" would have compelled the report regardless of litigation).

In the instant case, Winthrop has failed to meet its "heavy burden" of establishing the applicability of the work product privilege. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F. 3d at 183. A review of the deposition transcript reveals that the particular line of questioning here by Plaintiffs' counsel concerned a "complaint file" that was purportedly kept by Zebroski at Winthrop Hospital. *See* Zebroski Dep. at 118. This complaint file apparently contained complaints, not only with respect to deaf individuals, but rather "[f]or everybody." *Id*. at 119. Further, Zebroski characterized the file as a "database" and claimed that she had reviewed it as recently as one day prior to her deposition. *Id*. Initially, the Court points out that Zebroski was proffered as Winthrop's Rule 30(b)(6) witness. The question of whether Zebroski produced her complaint file to outside counsel called for a simple yes or no answer — one without an impact on any privilege asserted. Moreover, to the extent Zebroski assisted outside counsel in responding to discovery demands, the question was relevant.

As stated above, the work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183. Therefore "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation. . . .", *Adlman*, 134 F.3d at 1202, are not imbued with work product status. Plaintiffs' counsel sought to ask two questions concerning the subject complaint file: (1) whether the complaint file was produced to Winthrop's counsel; and (2) the date Zebroski last reviewed the complaint file for complaints lodged by deaf individuals. *See* Zebroski Dep. at 118-119. Neither

of the posed questions goes to the substance of the complaints which may have existed within the complaint file. The complaint file itself, based upon a straightforward reading of the deposition transcript, falls outside the ambit of the work product privilege. Specifically, the transcript reflects that this complaint file or database was kept by Zebroski on behalf of Winthrop Hospital in the ordinary course of the hospital's business. Indeed, a hospital may have multiple purposes for preparing a complaint database (*i.e.* to ensure efficient operations, patient satisfaction, quality control and proper compliance with statutory and regulatory requirements), separate and apart from any particular litigation. There is no indication that this complaint file was prepared by or at counsel's direction in anticipation of the *instant litigation* or was otherwise the product of investigative or analytical tasks to aid counsel in preparing for litigation. As such, the work product privilege is inapplicable and Winthrop's objection is without merit. The witness should therefore have been permitted to answer the questions posed. In addition, although, as Winthrop asserts, certain pre-deposition conversations with an attorney may be shielded where the nature of the conversation would "reveal [] counsel's legal strategy and thought processes" in contravention of the attorney work product doctrine, the nature of the questions at issue here simply do not directly or indirectly peer into the thought processes or legal strategy of counsel.[2]

---

[2] In its opposition, Winthrop claims that the questions were "improper in that they sought information protected by the attorney-client privilege, as they implicate confidential communications between Ms. Zebroski and her attorneys regarding legal advice." *See* DE 56 at 3. In the first instance, Winthrop's counsel did not raise an objection based upon the attorney-client privilege to the questions at issue. The sole objection raised concerned the attorney work product privilege. *See* Zebroski Dep. at 118-120. As such, this objection is deemed waived. *See* Rule 30(c)(2) (stating that "[a]n objection at the time of the examination . . . must be noted on the record"); *see also McGullam v. Cedar Graphics, Inc.*, No. CV 04 2891, 2007 WL 708800, at *2 (E.D.N.Y. Mar. 6, 2007) ("courts have routinely held that objections not timely stated may be deemed waived."). In any event, Winthrop's generalized and conclusory assertion of the attorney-client privilege in its opposition is without merit since "in refusing to answer deposition questions a party may not rely on generalized assertions of attorney-client privilege but must

*See Morales v. United States*, No. 94 CIV. 4865, 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997) (internal quotations and citation omitted); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) ("Pre-deposition conversations may also be work product; to the extent Ex–Im's attorneys communicated their legal opinions and theories of the case, their conversations are immune from discovery.").

Based the foregoing analysis, Plaintiffs' motion to compel is GRANTED. The Court directs that the Rule 30(b)(6) deposition of Winthrop by its corporate representative, Jean Zebroski, be re-opened for the limited purpose of obtaining answers to the questions that the witness was erroneously directed not to answer. The re-opened deposition shall be held not later than 30 days from the date of the entry of this Order.

### B. Motion for an Award of Fees

Plaintiffs seek the award of fees and costs in preparing the underlying motion[3] for the "time spent on th[e] letter motion [to compel] pursuant to Fed. R. Civ. P. 37" in light of the fact

---

make reference to specific privileged communications that would be revealed." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 CIV. 8833, 1998 WL 2829, at *4 (S.D.N.Y. Jan. 6, 1998); *see S.E.C. v. Morelli*, 143 F.R.D. 42, 46 (S.D.N.Y. 1992) ("rather than enumerating the specific privileged communications that would be revealed, the SEC relies on the generalized assertion that the proposed deposition would necessarily involve revealing 'discussions with counsel.' In the absence of specific references by the SEC to privileged communications that would be revealed by allowing the deposition to proceed, the Court rejects plaintiff's argument that the . . . deposition would infringe on the attorney-client privilege.").

[3] Although Plaintiffs seek sanctions in addition to fees, Plaintiffs do not provide the Court with any authority or rationale as to why sanctions should be imposed other than conclusory assertions that Winthrop's counsel failed to follow the proper procedure for addressing deposition disputes and otherwise ignored applicable rules. *See* DE 55 at 3. However, such factual conclusions, "with no citations to the record or any legal authority for support does not constitute adequate briefing." *In re Julian*, No. 11-30151, 2012 WL 506573, at *4 (D. Conn. Feb. 15, 2012). Furthermore, "the Court has no obligation to consider an argument for which a party has cited no legal authority." *Glidepath Holding v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 n. 9 (S.D.N.Y. 2007); *see Field Day, LLC v. Cty. of Suffolk*, No. 04-CV-2202, 2005 WL

that "Defense counsel repeatedly advised Plaintiff's counsel that the proper procedure if a dispute arises is for the witness to decline to answer the question" and due to such an erroneous belief, "Defense counsel obstructed the proceedings, necessitating the instant letter motion." *See* DE 55 at 3. Winthrop responds stating that of the 121 pages of testimony elicited during the deposition, Plaintiffs "merely challenge, the refusal, in three isolated instances, to answer immaterial questions . . . [and] Plaintiffs have thus not demonstrated that counsel materially impeded, delayed, or frustrated their fair examination of Ms. Zebroski." *See* DE 56 at 3.

### 1. *Applicable Law*

Rule 37(a) provides that a party may make a motion to compel in the event that "a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(i). Further, after providing both sides an opportunity to be heard, in the event the motion is granted, the court "must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id*. 37(a)(5)(A); *see Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) ("an award of reasonable expenses, including attorneys fees, is available to the party that prevails on the motion if his adversary's position was not substantially justified"); *Fondren v. Republic American Life Ins. Co.*, 190 F.R.D. 597, 601

---

2445794, at *18 n. 8 (E.D.N.Y. Sept. 30, 2005), *aff'd in part, rev'd in part*, 463 F.3d 167 (2d Cir. 2006) ("[B]ecause . . . [the defendant] cites absolutely no authority to support . . . [its argument], the Court will not consider it."); *see also U.S. v. Van Buren*, No. 3:08-CR-198, 2008 WL 2884977, at *2 (N.D.N.Y. Jul. 23, 2008) ("[I]t is not the Court's role to peruse the cases or the legal data bases looking for authority that supports a broad legal assertion."); *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (noting that court's role is not to act as an advocate and therefore it is not required to "scour the record" or otherwise "research . . . legal theor[ies]" on behalf of a litigant); *Cicvara v. Duracell*, 515 F. App'x 27, 28 (2d Cir. 2013) (same). Because Plaintiffs have cited no authority to support their position nor presented proper argument as to why sanctions should be levied upon Winthrop, the Court declines to impose

(N.D. Okla. 1999). However, "the court must not order this payment if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(4)(A)(i); *see also* Local Civil Rule 37.3 ("Prior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute, in conformity with Fed. R. Civ. P. 37(a)(1)").

### 2. *Application to the Facts*

Although Plaintiff has prevailed upon its underlying motion to compel, the Court points out that Plaintiff, in its one paragraph motion for sanctions, has not provided the Court with a certification or any other information that it attempted in good faith to meet-and-confer with opposing counsel after the deposition concluded in order to attempt to "obtain the disclosure or discovery without court intervention." *See* Fed. R. Civ. P. 37(a)(4)(A)(i). In addition, taking the deposition as a whole, the Court has no evidence that Winthrop's counsel deliberately disrupted the proceedings in a manner that prevented Plaintiffs from obtaining the primary factual information sought from Jean Zebroski. The Court therefore declines to award attorney's fees or expenses to the Plaintiffs for the instant motion. However, because the actions of Winthrop's counsel will necessitate the re-opening of witness Zebroski's deposition, the Court will require Defendant Winthrop to pay the reasonable costs incurred for the court reporter and the transcript.

---

sanctions.

## III.    CONCLUSION

For the reasons stated in the foregoing discussion, Plaintiffs' motion to compel and motion for fees are hereby GRANTED, in part, and DENIED, in part, as set forth in this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
       March 22, 2016

/s/_A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge